**W. R. GRACE & CO., Plaintiff,**

v.

**UNION CARBIDE CORPORATION,
Defendant.**

**No. 70 Civ. 1174.**

United States District Court,
S. D. New York.

Sept. 25, 1970.

Fish & Neave, New York City, William K. Kerr, David W. Plant, New York City, of counsel, for plaintiff.

Kelley, Drye, Warren, Clark, Carr & Ellis, New York City, Wolfe, Hubbard, Leydig, Voit & Osann, Chicago, Ill., of counsel, for defendant.

## MEMORANDUM

TENNEY, District Judge.

Defendant, Union Carbide Corporation (hereinafter referred to as "Carbide"), moves pursuant to Fed.R. Civ.P. 12 for an order dismissing the within complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.

Plaintiff, W. R. Grace & Co. (hereinafter referred to as "Grace"), seeks declaratory judgment that two patents [1] of Carbide are invalid and that no product of Grace is within the scope of these patents. In addition, Grace seeks judicial construction of a 1960 licensing agreement between Grace and Carbide permitting Grace to use these patents. Finally, Grace seeks a determination that it has not breached and is not in default of the license, and requests the Court to enjoin Carbide from terminating the agreement.

The two patents which Grace contends are invalid are patents on molecular sieves issued to Carbide in 1959. In 1959, Grace and Carbide entered negotiations for the licensing of the patents to Grace for use in the manufacture of petroleum cracking catalysts. When they were unable to reach an agreement, Car-bide, in 1960, filed an action against Grace and one of its customers for patent infringement. Shortly after, the parties reached an agreement for the licensing of the patents to Grace.

In 1965, Grace began manufacturing a petroleum cracking catalyst called "XZ–25", a component of which is a molecular sieve. Soon thereafter a dispute arose between the parties as to the amount of royalty Grace agreed to pay under the license for use of these sieves. There was apparently no dispute, however, as to whether the license covered the molecular sieves utilized by Grace in its manufacturing process. In an effort to determine the amount of royalties due Carbide under the license, Grace filed a declaratory judgment action in 1966 (hereinafter referred to as the "1966 action") to have the court construe the license agreement.[2] In that action the basis for federal jurisdiction alleged was diversity of citizenship.

In the 1966 action, Grace alleged that it had made and sold and was continuing to make and sell molecular sieves under the license agreement with Carbide and that it had paid all royalties properly due under the agreement. Paragraph 7 of the complaint specifically indicated that the disagreement between the parties centered upon the amount of royalty due Carbide under the agreement. More specifically, Grace sought judicial determination that it was not in default of the agreement and a "determination as to the royalty required to be paid by [it] * * with respect to licensed molecular sieves sold in association with other articles in its petroleum cracking catalytic compositions." The complaint further prayed for an injunction to issue restraining Carbide from terminating the license.

The 1966 complaint was conspicuously silent as to any alleged invalidity of Carbide's patents and did not claim that the molecular sieves of Grace were not within the scope of the licensed patents.

---

1. Patents Numbers 2,882,243 and 2,882,-244.

2. W. R. Grace & Co. v. Union Carbide Corp., Civil No. 3328 (S.D.N.Y., filed Oct. 11, 1966).

Grace merely indicated that a controversy existed between the parties over the construction of the license agreement and that the court's jurisdiction was based on diversity of citizenship.

In 1968, Judge Tyler of this court denied Carbide's motion for summary judgment dismissing the 1966 action [3], noting that "the controversy, in the words of the plaintiff [Grace], 'relates to the royalty provisions of the agreement, and the complaint seeks an adjudication that * * * Grace * * * has paid * * * Carbide the full amount of royalties due under the agreement.' " [4] It was further noted that both parties agreed that the molecular sieves used by Grace in its "XZ–25" catalyst were covered by Carbide's patents and that Grace was obligated under the license agreement to pay royalties for use of these sieves.[5] Judge Tyler emphasized that there was really no dispute with regard to the validity and scope of the patents and observed that the central issue was essentially whether Grace was obligated to pay royalties based on the net sales value of the entire "XZ-25" catalyst product or whether the basis for such payment should be limited solely to the value of the molecular sieve component of the catalyst.[6]

In January of this year, in an apparent "awakening" during the course of a pre-trial conference, Grace indicated to Carbide that it intended to put the scope and validity of Carbide's patents into issue in the 1966 action. On March 20, 1970, after receiving formal notice from Grace that it intended to amend the 1966 complaint in order to place the validity and scope of Carbide's patents in issue, and that it would thereafter refuse to pay any royalties, Carbide commenced an action against Grace in the Supreme Court of the State of New York, County of New York, seeking royalties allegedly due it under the license agreement.

In response to the State action commenced by Carbide, Grace brought the within declaratory judgment action on March 23, 1970, requesting for the first time, an adjudication that the two patents of Carbide (which are the subject of the license agreement between the parties) are invalid and that the molecular sieves utilized by Grace in its manufacturing process are not within the scope of Carbide's patents. Grace asserts that this Court has jurisdiction of the action under 28 U.S.C. §§ 1331, 1338 (a), 2201 and 2202.

In sum, Grace contends that since it seeks a determination that Carbide's patents are invalid, a controversy exists between the parties within the meaning of 28 U.S.C. § 2201, and that said controversy is one "arising under" the patent laws of the United States pursuant to the requirements of 28 U.S.C. § 1338 (a). In opposition to Carbide's motion to dismiss, Grace argues that the complaint states a cause of action cognizable by this Court for which relief can be granted.

Prior to passage of the Federal Declaratory Judgment Act in 1934, 28 U.S.C. § 2201, the remedies available to an alleged patent infringer were severely limited, since the patentee was the only party permitted to commence an action placing the validity and scope of a patent in issue.[7] The patentee would often unfairly charge a manufacturer or his customers with infringement, which charge would usually injure the business of the manufacturer enough to force him to accept a license from the patentee, despite the likelihood that the patent was invalid or not infringed. The only relief available to an alleged infringer was an action for unfair competition which required

3. W. R. Grace & Co. v. Union Carbide Corp., Civil No. 3328 (S.D.N.Y., filed Dec. 3, 1968).

4. Id. at 2.

5. Id. at 7.

6. Id. at 8.

7. See generally 6A J. Moore, Federal Practice ¶ 57.20 (2d ed. 1966); E. Borchard, Declaratory Judgments 807, (2d ed. 1941).

the burdensome showing of bad faith on the part of the patentee.

■ After enactment of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, which merely provides a procedural remedy and does not affect the district court's jurisdiction,[8] an alleged infringer could commence an action in order to determine whether the patent issued was valid and infringed. This remedy was limited, however, to instances wherein actual controversies existed between the parties, since Article III of the United States Constitution specifically limited the federal courts' jurisdiction to "cases and controversies". This "controversy" requirement also protected the patentee from being harassed by parties with whom no controversy existed.[9]

■ In the typical declaratory judgment action in which a manufacturer seeks to have a patent declared invalid or not infringed, the patentee has charged the manufacturer or his customers with infringement, or at least has given general notice to the industry of his patent claim through publication in a trade journal.[10] While some authorities indicate that a charge of infringement is a prerequisite to a declaratory judgment action [11], the term "actual controversy" has been given a very liberal interpretation by the courts. E. g., Dewey & Almy Chem. Co. v. Amer. Anode, Inc., 137 F.2d 68, 70 (3rd Cir.), cert. denied, 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943). The patentee, however, should be permitted to avoid litigation if he refrains from charging infringement, since "the mere existence of the patent is not a cloud on title, enabling any apprehensive manufacturer to remove it by suit." E. Borchard, Declaratory Judgments, 807 (2d

ed. 1941); accord, Treemond Co. v. Schering Corp., 122 F.2d 702, 706 (3rd Cir. 1941).

■ This raises the question of whether an actual controversy has been pleaded by Grace in its complaint. No doubt a dispute exists between these parties with respect to the royalties due Carbide under the license agreement, but this "controversy" is one over which this Court has no jurisdiction since the parties are not of diverse citizenship.[12] In an obvious bootstrap attempt to remain in federal court, Grace contends that a controversy arising under the patent laws exists, inasmuch as it disputes the validity of Carbide's patents.

■ While there is little doubt that Carbide would assert the validity of its patents in response to a charge by Grace that the patents are invalid, "[i]t is obvious that a person not now engaged in possible infringing conduct, and having no immediate intention of doing so, but having an academic interest in the law of patents, could not obtain a declaratory judgment against a patentee as to the validity or scope of the patent. Such a dispute would be of a 'hypothetical or abstract character' not within the federal judicial power." Dewey & Almy Chem. Co. v. Amer. Anode, Inc., supra, 137 F.2d at 70.[13]

■ The only evidence that a controversy exists between the parties concerning the validity and scope of the patents is a suit filed by Carbide in 1960 against Grace and one of its customers for infringement of the patents in question. Although such charge, coupled with commencement of a suit would normally be the basis for a federally cog-

8. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

9. The requirement of a controversy also seeks "to avoid the use of a suit to provoke the controversy to be adjudicated." Leesona Corp. v. Concordia Mfg. Co., 312 F.Supp. 392, 397 (D.R.I.1970).

10. See supra note 7.

11. E. g., E. Borchard, Declaratory Judgments 807, (2d ed. 1941).

12. Luckett v. Delpark, Inc., 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703 (1926); accord, Wilson v. Sandford, 51 U.S. (10 How.) 99, 13 L.Ed. 344 (1851).

13. See supra note 9.

nizable controversy,[14] the parties apparently intended to avoid litigation by entering into a licensing agreement. Grace is apparently attempting to resurrect the 1960 suit and controversy merely that they may serve as the bases for the present declaratory judgment action. Despite the liberal construction given to the term "actual controversy", this Court does not view the 1960 action, to which Grace responded by entering into a licensing agreement with Carbide, as a legitimate basis for the present action. There is no evidence of letters being sent to Grace by Carbide charging infringement nor of a history of hostile litigation between the parties to reinforce the claim that a controversy does in fact exist. *Cf.*, Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1000 (2d Cir. 1969). Since there is no evidence that a current controversy exists between the parties, concerning the validity and scope of Carbide's patents, the issues raised by the instant complaint appear to be academic. Dewey & Almy Chem. Co. v. Amer. Anode, Inc., *supra*, 137 F.2d at 70.

In further support of the finding that the issues presented herein are academic and consequently outside of this Court's jurisdiction, is the fact that Grace has remained a licensee of Carbide. Had the license been terminated or, had it not covered the patents in question, a controversy could have existed if Carbide charged Grace with infringement.[15] Such is not the case, however, since Grace has emphasized in both its 1966 and 1970 complaints that it seeks to restrain Carbide from terminating the license agreement. Indeed, in the 1966 action Carbide agreed to waive its right to terminate the license agreement while that action was pending. That Grace has chosen to retain the benefits of the license and not terminate the agreement despite its refusal to pay royalties, and has even sought to restrain Carbide from termina-

ting the agreement makes it abundantly clear that no controversy exists between the parties respecting the validity and scope of the patents. If Grace actually believed that the patents were invalid or did not cover the molecular sieves in question, it would not have brought the 1966 declaratory judgment action to merely have the license construed. It is also unlikely that it would have taken such great pains to retain its licensee status in both the 1966 and 1970 actions if it believed that the patents were invalid. It appears that Grace is merely attempting to clothe this Court with jurisdiction despite the absence of diversity of citizenship by clouding the contract issue with allegations that the patents are invalid. Despite Grace's protestations to the contrary, I find that the undisputed facts compel the conclusion that the real dispute herein is over the license agreement and does not concern the scope and validity of the patents.

■ In addition to the existence of a controversy, Section 2201 of Title 28 also requires that the controversy be one over which the federal court would otherwise have jurisdiction. It is well established that an action brought on a patent license agreement does not "arise under" the patent laws of the United States, but rather arises under the state law of contracts. "It is a general rule that a suit by a patentee for royalties under a license or assignment granted by him, or for any remedy in respect of a contract permitting use of the patent, is not a suit under the patent laws of the United States, and cannot be maintained in a federal court as such." *Luckett v. Delpark, Inc.,* 270 U.S. 496, 502, 46 S.Ct. 397, 399, 70 L.Ed. 703 (1926).

The Supreme Court has also held in *Pratt v. Paris Gas Light & Coke Co.,* 168 U.S. 255, 260, 18 S.Ct. 62, 64, 42 L.Ed. 458 (1897), "that the federal courts

---

14. Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87 (2d Cir. 1963) ; Treemond Co. v. Schering Corp., 122 F.2d 702 (3rd Cir. 1941).

15. Thiokol Chem. Corp. v. Burlington Indus., Inc., 313 F.Supp. 253 (D.Del.1970) ; Ski Pole Specialists, Inc. v. McDonald, 159 U.S.P.Q. 709, 711 n. 4 (9th Cir. 1968).

have no right, irrespective of citizenship, to entertain suits for the amount of an agreed license or royalty, or for the specific execution of a contract for the use of a patent, or of other suits where a subsisting contract is shown governing the rights of the party in the use of an invention, and that such suits not only may, but must, be brought in the state courts."

Moreover, "[w]here the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law." Public Service Comm. v. Wycoff Co., 344 U.S. 237, 248, 73 S.Ct. 236, 242–243, 97 L.Ed. 291 (1952).

■ Since in a declaratory judgment action it is the nature of the impending state action which determines whether federal-question jurisdiction exists, and since it is well established that an action on a patent license agreement for royalties does not arise under the patent laws, this Court is without jurisdiction of the instant action. That is, since Grace has essentially asserted a defense to the pending state action of Carbide for royalties due under the license agreement, "federal-question jurisdiction" is obviously lacking.

Grace suggests that the holding in JFD Electronics Corp. v. Channel Mas-

ter Corp., 229 F.Supp. 514 (S.D.N.Y. 1964), vests this court with jurisdiction of the within action. I find, however, that that case is distinguishable from the instant suit and therefore not controlling. One significant difference between the above-cited case and the instant suit is that in *JFD, supra*, there was a clear charge of infringement against the licensee by the patentee. In addition, the declaratory judgment action was viewed by the *JFD* court as one for the disparagement of a product requiring a showing by plaintiff that the patent in question was either invalid or not infringed. Hence, there existed a controversy "arising under the patent laws of the United States" which conferred jurisdiction on the federal court. A similar conclusion was reached in Ostow & Jacobs, Inc. v. Morgan-Jones, Inc., 180 F.Supp. 38 (S.D.N.Y.1959). The instant action, however, is on the license agreement and does not require a showing that the patents are invalid or not infringed. Moreover, there has been no infringement charge against Grace by Carbide. Accordingly, I find this Court without federal-question jurisdiction over the instant action. Thiokol Chem. Corp. v. Burlington Indus., Inc., 313 F.Supp. 253 (D.Del. May 25, 1970).

In Thiokol Chem. Corp. v. Burlington Indus., Inc., *supra*, the Court considered a situation legally indistinguishable from that presented herein, and found that it was without subject matter jurisdiction since no controversy existed over the validity and scope of the patent. The Court indicated that under 28 U.S.C. § 2201 a controversy over the validity and scope of the patent *could not* possibly exist between a patentee and his licensee, *accord*, MacGregor v. Westinghouse Elec. & Mfg. Co., 45 F.Supp. 236, 237 (W.D.Pa.1942), aff'd per curiam, 130 F.2d 870 (3rd Cir. 1942) since a patentee could not charge the licensee with infringement. Moreover, it was noted that the recent Supreme Court decision, Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), eliminating the doctrine of licensee estoppel in ac-

tions on a patent license agreement, was not relevant to the *Thiokol* action. The licensee in *Thiokol, supra,* unsuccessfully argued that since a licensee could defend against a suit commenced by the patentee on the license agreement by challenging the patent's validity, it followed that the licensee should be permitted to seek declaratory judgment that the patent is invalid. This argument was obviously rejected by the *Thiokol* court when it held that a declaratory judgment action was within the court's jurisdiction when there was an actual controversy arising under the patent laws, and not because the licensee could now assert a defense previously unavailable to it.

Since this Court finds no evidence of an actual controversy existing between Grace and Carbide over the validity of the patents, it is unnecessary to determine whether a controversy *could* exist between a patentee and his licensee. I note, however, that this Court is persuaded by the reasoning in *Thiokol, supra,* especially in light of the decisional history and purpose of extending the declaratory judgment remedy to alleged patent infringers.[16] Carbide is obviously unable to charge Grace or its customers with infringement and thereby force them to accept a license on a patent of questionable validity since Grace already is a licensee and apparently intends to remain such. Thus, any purported interest by Grace in the validity of the patent would appear to be academic. Only if the license were terminated or did not cover the patents in question, and Grace continued to utilize the molecular sieves in its manufacturing process, could it be determined that Grace had an other than academic interest in the validity of the patents. Thiokol Chem. Corp. v. Burlington Indus., Inc., *supra; see also* Ski Pole Specialists, Inc. v. McDonald, 159 U.S.P.Q. 709, 711 n. 4 (9th Cir. 1968).

In any event, even if it were determined that an actual controversy aris-

ing under the patent laws exists herein, the Court would still exercise the discretion available to it under 28 U.S.C. § 2201, by dismissing the instant action in favor of permitting Carbide's earlier filed state court action to proceed. Product Eng. and Mfrs. Inc. v. Barnes, 424 F.2d 42 (10th Cir. 1970). The Supreme Court has acknowledged the existence of this discretion in Public Affairs Assoc., Inc. v. Rickover, 369 U.S. 111, 112, 82 S. Ct. 580, 583, 7 L.Ed.2d 604 (1962), wherein it was held that "[t]he Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Accord,* Lear Siegler, Inc. v. Adkins, 330 F.2d 595, 599 (9th Cir. 1964).

Since this Court finds that no actual controversy arising under the patent laws exists herein, and in view of the fact that a state court action was filed prior to this action wherein all issues may properly be decided,[17] Carbide's motion to dismiss is granted.

There is also pending before this Court a motion by Carbide pursuant to Fed.R. Civ.P. 12(h) (3) to dismiss the complaint in the 1966 action on the grounds that diversity of citizenship between Carbide and Grace is lacking. In response to this motion, Grace contends that the real basis for the 1966 action is federal-question jurisdiction since it is an action arising under the patent laws of the United States. Grace has also indicated in a pre-trial memorandum filed in the 1966 action that it intends to amend the 1966 complaint to conform to the one filed in 1970. Since there is no diversity of citizenship between the parties (Grace's principal place of business is in New York and Carbide is a New York corporation), Carbide's motion is granted. In light of the disposition reached herein regarding the 1970 complaint, any purported amendment of the 1966 complaint to conform to the 1970 would appear to be futile.

---

16. *See generally supra* note 7.

17. Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969).

**314**

Accordingly, and for the foregoing reasons, defendant's motions to dismiss the 1966 and the 1970 complaints are granted.

So ordered.