**DAHLGREN MANUFACTURING COM-
PANY**

v.

**HARRIS CORPORATION**

v.

**Harold P. DAHLGREN.**

**Civ. A. No. 3–7716–F.**

United States District Court,
N. D. Texas,
Dallas Division.

Aug. 12, 1975.

John L. Hauer, Dallas, Tex., for plaintiff.

Dan McElroy, Dallas, Tex., John Lansdale, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT W. PORTER, District Judge.

This suit was filed originally in Texas state court by Plaintiff, the Dahlgren Manufacturing Company, alleging an appropriation of Dahlgren Manufacturing's trade secrets by Defendant, the Harris Corporation (hereinafter referred to either as Defendant or Harris). Harris removed to this Court on the basis of diversity of citizenship. With its answer, Harris filed a counterclaim against the Plaintiff corporation and a third party complaint against its individual owner, Harold P. Dahlgren, seeking *inter alia,* to assert by way of Declaratory Judgments the invalidity of certain domestic patents held by the Plaintiff which are licensed to Harris pursuant to a cross-licensing agreement between the parties entered into on February 1, 1966. Also filed by Harris was a second counterclaim and third-party complaint seeking to enforce portions of the 1966 licensing agreement which relate to patents issued to the Plaintiff by ten different foreign nations.

Now before the Court are the Plaintiff and third party Defendant's (hereinafter referred to either as Plaintiff or Dahlgren) motions to dismiss both counterclaims and third party actions. Dahlgren has also filed two separate Motions for Partial Summary Judgments seeking to declare void the heretofore mentioned cross-licensing agreement and to declare the foreign patents valid. As more fully appears below, all motions are denied.

■ The first counterclaim presents the novel question of whether a patent licensee operating under a cross-licensing agreement can raise by Declaratory Judgment in a counterclaim the issue of invalidity of the patent which is the subject of the license agreement when the original complaint filed by the licensor has not alleged infringement but only common law unfair competition and breach of contract. The issue presented is whether in these circumstances a declaratory judgment action creates an actual case or controversy arising under the patent laws and invoking the jurisdiction of this federal court. Clearly, the maintenance of declaratory relief is subject to the same limitations of justiciability as any other litigation in the federal courts. *Maryland Casualty Co. v. Pacific Coal and Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

It is Dahlgren's position that absent a charge lodged by the licensor of infringement of his patent by the licensee, no justiciable controversy exists over validity and Declaratory Judgment is improper. The foundation of this argument is the statement in 1941 by Professor Borchard, the architect of the federal declaratory judgment statute, that

the mere existence of the patent is not a cloud on title, enabling any apprehensive manufacturer to remove it by suit. It requires an assertion of right under the patent to place the alleged infringer in gear to join issue and

challenge the title. E. Borchard, Declaratory Judgments (2d ed. 1941). Without doubt, this position has found support in the case law. See *Treemond Co. v. Schering Co.*, 122 F.2d 702 (3rd Cir. 1941).

It is equally apparent, however, that in recent years there has been a drift of authority away from an absolute requirement of an actual charge of infringement. Exemplary of this development is *Muller v. Olin Mathieson Chemical Corp.*, 404 F.2d 501 (2nd Cir. 1968). In *Muller* no actual charge of infringement had been lodged, but declaratory relief was upheld where the Court was of the opinion that the numerous years of disagreement between the parties had placed the licensees in such a position that they either had to abandon the patent in question or use it with the risk of being sued for infringement. Judge Waterman noted that to deny the justiciability of the patent validity issue was to "ignore the realities of business life." 404 F.2d at 505.

The issue is further complicated by the lingering problem raised by the so-called licensee estoppel doctrine. Under traditional contract notions, it had been held that a licensee was estopped from challenging the validity of a licensing agreement which inured to him the benefit of the use of a patent. *Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1949). Recognizing that the licensee was often the only entity with sufficient interest to challenge a patent, the Supreme Court overruled this licensee estoppel doctrine in *Lear v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). This decision paved the way for licensees to challenge patent validity.

Notions of contract law persist, however, in limiting the ability of licensees to contest underlying patents. In *Thikol Chemical Corp. v. Burlington Industries, Inc.*, 313 F.Supp. 253 (D.Del.1970), the Court refused jurisdiction in a declaratory judgment action by a licensee. The licensee was seeking to declare invalid the patents which were the subject of the agreement between the parties. *Thikol* distinguished *Lear* as a suit relating solely to a contract relationship (royalties) and which was therefore not a jurisdictional decision. Relying upon the Borchard theory of this type of declaratory judgment, the Court stated that in only three circumstances could a licensee be found to have been charged with infringement thereby raising the federal question of patent validity, to-wit: 1) the alleged infringing devices are not covered by the license, 2) the license has expired, or 3) the licensee has repudiated the agreement; citing *Ski Pole Specialists, Inc. v. MacDonald*, 159 U.S.P.Q. 709 (1969); See also *W. R. Grace and Co. v. Union Carbide Corp.*, 319 F.Supp. 307 (S.D.N.Y.1970). None of these prerequisites were found to exist in · *Thikol* and jurisdiction was therefore refused. Similarly, none exist in the case now before this Court and if the logic of *Thikol* is controlling, Dahlgren's motion should be granted.

Analysis of the Thikol decision reveals, however, both why it should not be determinative of the instant motion and why this Court does have jurisdiction over the declaratory judgment claims in question. The defendant licensee in *Thikol* was the Plaintiff in a state court action between the same parties involving liability for royalties. The Court held that the attempted use by the Plaintiff licensor of a federal declaratory action was merely the assertion of a defense to the pending state court suit. In such a situation it is the nature of the state action which determines whether federal question jurisdiction exists, *W. R. Grace, supra;* therefore in *Thikol*, where the state suit was a contract dispute between non-diverse parties, the action did not arise under the patent laws and was not within federal jurisdiction.

The case now before this Court comes under federal jurisdiction through diversity of citizenship pursuant to re-

moval. Once jurisdiction has attached to the controversy, the *Lear* analysis is dispositive of the question of whether the presentation of a patent validity issue by the licensee raises a justiciable controversy. It is apparent that the question of the validity of the Dahlgren patents pervades the entire history of the conflict between the parties. To hold that the Defendant's first counterclaim does not present a justiciable issue would be to ignore the realities of th parties' relationship. It was this type of situation that the *Lear* decision was meant to cure.

It was the potential for a conflict of federal and state jurisdictional issues which caused the Court in *Thikol* to delineate such stringent standards for the maintenance of an invalidity suit by a licensee. This is aptly demonstrated by the fact that once the impediment to federal jurisdiction was removed, that is, when the underlying license contract which was the subject of the state suit was terminated, the same federal court held that a justiciable controversy over patent invalidity was presented. *Thikol Chemical Corp. v. Burlington Industries, Inc.*, 319 F.Supp. 218 (D.Del. 1970).

 Although in the instant action the Dahlgren license agreement remains in effect, there is no conflict of jurisdiction problem present. Hence this Court is not bound by the prerequisites of the *Thikol* theory and must simply decide whether the controversy between the parties is sufficiently substantive and immediate to satisfy the usual constitutional test of justiciability. See *Altvater v. Freeman*, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450 (1943). I find that an actual controversy exists over the validity of the Dahlgren patents. As discussed above, some cases have seized upon a charge of infringement as the only evidence sufficient to allow the maintenance of a declaratory judgment action arising under the patent laws. Professor Moore states, however, that the " 'charge of infringe-

ment' has been given a very liberal interpretation," and "is not an inflexible prerequisite to the maintenance of an action for a declaration of . . . invalidity." Moore, *Federal Practice,* ¶ 57.20 (4th ed. 1974); See also *Dewey and Almy Chemical Co. v. American Anode, Inc.*, 137 F.2d 68 (3rd Cir.), *cert. denied*, 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943); and *Muller, supra.* Moreover, I believe that I am entitled to consider the history of the dispute between the parties. *Blessings Corp. v. Altman*, 373 F.Supp. 802 (S.D.N.Y. 1974). A brief glance at the record of this case reveals that it is replete with indications that Dahlgren and Harris are embroiled in an actual and real controversy over the patents in issue. Jurisdiction over the Defendant's first counterclaim is sustained.

I now turn to the Motion to Dismiss the Defendant's second counterclaim which seeks an injunction against Dahlgren to restrain the exertion of rights under certain foreign patents against Harris. The counterclaim also seeks to direct Dahlgren to negotiate licensing agreements relating to these foreign patents as is allegedly contemplated by the February 1, 1966 cross-licensing agreement between the parties.

Dahlgren cites numerous patent and trademark cases in support of his argument that on the basis of comity and the Act of State Doctrine of international law, this Court lacks jurisdiction over the second counterclaim. Dahlgren apparently believes that the entertainment of the counterclaim would require a decision on the invalidity of the patents issued by other nations and that such a decision would be an unwarranted intrusion into the sovereignty of foreign states. See *Packard Instrument Co. v. Beckman Instrument, Inc.*, 346 F.Supp. 408 (N.D.Ill.1972), and *Velsicol Chemical Corp. v. Hooker Chemical Corp.*, 230 F.Supp. 998 (N.D.Ill.1964). I view the second counterclaim, however, not as a patent action relating to the foreign patents in issue, but rather as a simple con-

tract suit alleging a breach of the underlying agreement with jurisdiction founded in diversity of citizenship.

■ Portions of the 1966 agreement call for good faith negotiations between the parties to enter into non-exclusive licensing agreements with respect to the manufacture and sale of lithographic dampeners in foreign countries. According to Harris' counterclaim, which of course must be taken as accurate for purposes of this motion to dismiss, Dahlgren has pursued a course of conduct designed to undermine the portion of the agreement calling for the negotiation of licensing arrangement and Harris asserts this amounts to a breach of the 1966 contract. Nothing in the counterclaim seeks to void any foreign patent obtained by Dahlgren but merely seeks to refrain the Plaintiff from *using* those patents which allegedly are now being used in violation of a contract between two American nationals, Dahlgren and Harris.

Dahlgren is able to cite authority which supports a refusal to enjoin the use of a foreign trademark. *Vanity Fair Mills, Inc. v. T. Eaton Co., Ltd.*, 234 F.2d 633 (2nd Cir.), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956). Without question, the considerations of comity with respect to another country's trademarks are substantially the same as those involved regarding foreign patents. The cases relied upon, however, are all suits arising under the patent laws involving alleged infringement of a United States trademark by the use of a foreign mark. An injunction against the use of a foreign trademark which is infringing an American mark involves far different consideration of comity than the instant case where the jurisdiction of the Court stems solely from a domestic contractual relationship. If on trial of the issues involved Harris proves itself entitled to an injunction, the issuance of the decree would in no way affect the validity of the foreign patent or intimate that it

infringes the United States patent. Such relief would relate only to the *in personam* jurisdiction of the United States Courts over American nationals.

■ The authority to issue an *in personam* injunction against the use of a foreign patent is illustrated by *Bulova Watch Co., Inc. v. Steele*, 194 F.2d 567 (5th Cir. 1952) aff'd *Steele v. Bulova Watch Co., Inc.*, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252 (1952). In this case the more intense international comity considerations relative to infringement were present as the allegations were that the Defendant's use of a Mexican trademark was to the detriment of Bulova's United States Mark. The Fifth Circuit Court of Appeals stated that the issuance of the mark to the Defendant did not place

upon him any duty to use the [mark]. The Republic of Mexico [is] not interested in his exercise of the privilege purportedly granted. For the United States to exercise its jurisdiction over one of its own nationals involves no conflict with the sovereignty of the Republic of Mexico. 194 F.2d at 571.

I therefore conclude that a decision by the Court on whether to issue an injunction against Dahlgren with respect to the 1966 agreement does not involve considerations of international policy which would require this Court to refuse jurisdiction.

■ Alternatively, Dahlgren asks this Court to refrain from exercising jurisdiction under the doctrine of *forum non conveniens*. If the problem presented were the validity of the foreign patents, this theory might be meritorious. As stated, however, the issues will revolve around the domestic contract between the parties. Although questions of foreign law may be present, Rule 44.1 of the Federal Rules of Civil Procedure specifically envisions the use of such authority in the federal courts, and in this case I see no reason for refraining

from exercising jurisdiction on that basis.

■ Likewise, Dahlgren's Motion for a Partial Summary Judgment to declare the validity of the foreign patents will be denied. Dahlgren asserts that the Act of State Doctrine requires an affirmative recognition of the issuance of the patents as sovereign acts of foreign nations to be respected in this country. See *First National City Bank v. Banco Nacional de Cuba,* 406 U.S. 759, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972); *Banco Nacional de Cuba v. Sabbatine,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). As explained, this Court is of the opinion that the Defendant's second counterclaim can be adjudicated without a decision on the validity or invalidity of the foreign patents and their sovereignty simply is not in issue in this case.

■ The Plaintiff's Motion for a Partial Summary Judgment seeking to declare invalid the license agreement of 1966 will also be denied. In support of the Motion, Dahlgren says that both the Plaintiff and Defendant have entered judicial prayers to set aside the contract. The Defendant, however, has also asked for alternative relief which would leave the agreement in effect should it fail in its declaratory judgment action on invalidity. Clearly, Rule 8(e)(2) of the Federal Rules of Civil Procedure allows the Defendant to make such alternative requests and the appropriate relief, if any, will depend upon a trial of the issues raised by the pleadings. See *Banco Continental v. Curtiss National Bank,* 406 F.2d 510 (5th Cir. 1969). A contrary ruling would again result in an avoidance of the ultimate dispute between the parties over the validity of the Dahlgren patents.

For all of the above reasons, the Motions to Dismiss the counterclaims and the Motions for Partial Summary Judgments filed by the Plaintiff are denied.

It is so ordered.