AG–TRONIC, INC., Plaintiff,

v.

**FRANK PAVIOUR LTD. et al., Defendants.**

Civ. No. 74–0–340.

United States District Court,
D. Nebraska.

Feb. 11, 1976.

Supplemental Opinion March 12, 1976.

Dennis L. Thomte, Omaha, Neb., for plaintiff.

Louis J. Strom, Omaha, Neb., for defendant, New Zealand.

Edward G. Garvey, Omaha, Neb., Robert B. Murray, Washington, D. C., for defendant, Frank Paviour Ltd. and Frank Paviour.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court upon the motions of defendants to dismiss for lack of personal jurisdiction and lack of subject matter jurisdiction pursuant to Rule 12(b), F.R.Civ.P. [Filings # 28, 41] subsequent to the submission of briefs and oral argument before the Court on December 19, 1975.

Ag-Tronic, Inc., a Nebraska corporation, brought this action for a declaratory judgment of invalidity of a patent or non-infringement or both. Defendant, Frank Paviour Ltd., a New Zealand partnership, is a licensee of the patent in suit, and defendant, Frank Paviour, is a principal in defendant, Frank Paviour Ltd. Defendant, New Zealand Inventions Development Authority [hereinafter the Authority] is the owner of the patent in suit. Jurisdiction is founded upon 28 U.S.C. §§ 1338 and 2201.

On December 20, 1974, the New Zealand Government Property Corporation acquired rights to an invention of two New Zealand government employees. These rights vested in the New Zealand Invention Development Authority in accordance with an assignment of June 24, 1970. The patent in controversy, U.S. Patent No. 3,842,802, which issued to the inventors on October 22, 1974, covers a device known as the "Chin-Ball Mating Harness," a device for detecting cows in heat. When the patent issued, plaintiff was manufacturing and marketing a similar chin-ball marker. At the time the events herein occurred, the defendants Frank Paviour and Frank Paviour & Company (formerly Frank Paviour Ltd.) [hereinafter the Licensees] were operating under a license agreement entered into on May 6, 1970, with the Authority. This license was for a term of five years and stated that patent applications had been filed in New Zealand, Australia, the United Kingdom, Canada and the United States. The license granted the Licensees an exclusive license to make, use, exercise or vend the articles in question. The license agreement specifically governed the rights of the Authority and the Licensees to take action for infringement:

18. The Licensee shall give notice in writing to the Authority of any infringement of any Patent under which rights are granted hereunder which shall at any time and from time to time come to its knowledge.

19. In the event of any infringement if the Authority thinks fit and the Licensee requires it the Authority shall at the expense of the Licensee take action for infringement. The Authority may take action on its own account and at its own expense for infringement and the Licensee may after three months of having given notice in writing of an infringement take action on its own account, the Authority lending its name if essential but the Licensee shall indemnify and keep indemnified the Authority against all costs and expenses.

Plaintiff commenced this action on December 10, 1974, against Frank Paviour and Frank Paviour & Company only, alleging that on or about October 29, 1974, the Licensees conferred with the president of plaintiff corporation and charged plaintiff with infringement of United States Patent No. 3,842,802 and demanded that plaintiff discontinue the manufacture and sale of its alleged infringing markers; that since October 29, 1974, defendants have been advising plaintiff's customers that plaintiff's markers infringed United States Patent No. 3,842,802 but have not yet filed suit to determine whether infringement does actually exist.

The Commercial Officer of the New Zealand Inventions Development Author-

ity, at the time the events herein occurred, states in an affidavit an agreement formed between Licensees and the Authority at a meeting which took place on October 11, 1974:

Now that information had been received that the United States patent would be granted it was agreed it was appropriate the terms of the United States license should be settled. These terms were to generally follow the terms of the New Zealand license agreement dated 6 May 1970. However, they were to be modified to exclude any provision which could be contrary to United States law involving Anti-Trust Legislation and it was agreed the advice of counsel in the United States should be accepted insofar as this matter was concerned. It was also agreed Frank Paviour & Co. would not enjoy any right enabling them to commence proceedings for infringement of the patent. This right was reserved solely to the Authority. These terms were verbally agreed to and it was arranged the Authority should instruct its legal advisors to prepare such license.

Affidavits of defendant Francis Lester Paviour and Kenneth Coupland Chandler, Partners of the Licensees, are to the same effect.

A written license formalizing the oral license of October 11, 1974, was entered into between the Authority and the Licensees on April 2, 1975. This license agreement grants to the Licensees an exclusive license to use, exercise or vend, but contains no right to manufacture under the patent in suit. In the event of infringement coming to the knowledge of the Licensees, the Licensees shall give notice in writing to the Authority, and the Authority can take action on its own account and at its own expense. The Licensees have no right to take action for infringement on their own account.

## I.

The Declaratory Judgment Act requires an "actual controversy," in recognition of the "cases" and "controver-

sies" limitations in the Constitution. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239–240, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

Generally speaking, in patent cases it is held that there is such an "actual controversy" only if the patentee-defendant in the declaratory judgment lawsuit has either expressly or impliedly charged the plaintiff with infringement of its patent. . . . [S]uch a charge . . . can be found in any conduct or course of action on the part of the patentee which would lead a reasonable man to fear that he or his customers face an infringement suit or the threat of one if he continues or commences the activity in question. *Sherwood Medical Industries v. Deknatel, Inc.*, 512 F.2d 724, 727–728 (8th Cir. 1975).

Kenneth Coupland Chandler, a member of the partnership of Frank Paviour & Company, visited the United States in 1973 and telephoned Dale Watley, Vice President of Ag-Tronic, and informed him that the Licensees were acting under a pending United States Patent application.

Francis Lester Paviour, a member of the partnership of defendant Frank Paviour & Company, states in affidavit:

Towards the beginning of October, 1974, I was advised that United States Patent No. 3,842,802 would issue on the 22nd of October, 1974. Mr. Chandler and I agreed that the appropriate course of action would be to make this known to Ag-Tronic, Inc. . . .

On the 29th of October, 1974, Mr. Chandler and I visited Ag-Tronic, Inc. We met Mr. Orvil [sic] Watley, President of Ag-Tronic, Inc. . . . [and] in accordance with our previous understanding with Mr. Dale Watley we supplied Mr. Orvil Watley with a copy of the United States Patent No. 3,842,802 and also provided him with a copy of United States trademark registration No. 987,609.

. . . At no time was any threat made to commence legal proceeding.

The affidavit of Chandler is to the same effect. Orlen Watley states in affidavit that during the October 29, 1974, meeting

either Messrs. Paviour or Chandler made statements substantially as follows:

A. Frank Paviour Ltd. was operating under license of United States Patent No. 3,842,802.

B. Ag-Tronic's chin-ball marker device infringed the claims of United States Patent No. 3,842,802.

C. Ag-Tronic should get out of the business of making, using and selling chin-ball marker devices.

D. Frank Paviour Ltd. was willing to buy the inventory of Ag-Tronic's chin-ball marker devices at Ag-Tronic's manufacturing cost.

On November 5, 1974, counsel for Frank Paviour Ltd. wrote a letter to Orville Watley, pointing out that a copy of the United States Patent No. 3,842,802 was furnished to him in October and requesting a reply to the matters raised by Paviour and Chandler by November 30, 1974.

Defendants' motion to dismiss must be treated as one for summary judgment under Rule 56, F.R.Civ.P., because matters outside the pleadings have been presented to the Court. *See* Rule 12(b), F.R.Civ.P. After the submission of affidavits if a court concludes that no justiciable controversy is present, summary judgment is warranted where there is no issue of fact. *See Drew Chemical Co. v. Hercules*, 407 F.2d 360 (2d Cir. 1969); *Methode Electronics v. Elco Corp.*, 385 F.2d 138, 141 (3d Cir. 1967). Clearly, a dismissal on the basis of no "reasonable apprehension of suit" is inappropriate. Watley attests that either Paviour or Chandler informed him on October 29, 1974, that Ag-Tronic's device infringed the patent. Paviour and Chandler deny making any threat or charge. This issue must, therefore, be resolved at trial.

However, acts of a patentee's agents charging infringement without specific authority do not warrant the initiation of a declaratory judgment action. *Dr. Beck & Co. v. General Electric Co.*, 317 F.2d 538 (2d Cir. 1963). The uncontroverted affidavits make clear that the Licensees had no express authority from the Authority to level a charge of patent infringement on behalf of the Authority. The Court also finds that the Licensees had no apparent authority to charge infringement. "[A]pparent authority results from conduct by the principal which causes a third person reasonably to believe that a particular person, who may or may not be the principal's agent, has authority to enter into negotiations or make representations as his agent." Seavey, *Agency* (1964) at p. 13. *See Restatement of the Law of Agency*, § 27 (1933); *First National Bank of Wilber v. Ridpath*, 47 Neb. 96, 66 N.W. 37 (1896). The Authority, the principal, had engaged in no conduct at that time which would cause Ag-Tronic to believe it consented to the Licensees' charges of infringement. *See Sherwood Medical Industries, Inc. v. Deknatel, Inc., supra*, 512 F.2d at 728, n. 4. Furthermore, the Authority cannot be said to have been in a position where it should have realized that the plaintiff would have reasonably believed that the Licensees were authorized to charge infringement, since it specifically ordered the Licensees not to charge infringement or threaten suit.

Plaintiff nevertheless attempts to impute the threat to sue to the Authority by relying on *Sherwood Medical Industries v. Deknatel, supra*. The Court finds that the *Deknatel* case is distinguishable. In *Deknatel*, the charges were made by an executive of the defendant patent owner. Furthermore, the defendant's patent attorney had sent a letter to plaintiff requesting a sample of its device for inspection to determine infringement. The court held that:

[I]n determining whether a charge could be reasonably inferred the court must look at the *entire conduct of action* and *all* of the defendant's relevant conduct. Such a comprehensive view in this case reveals that Dekna-

tel's actions reasonably told Sherwood that Deknatel was completely serious about protecting its patents . . . . (Emphasis in original) *Id.* at 728.

The court, after further discussion, held:

When all of these factors are viewed together as one course of action it must be concluded that Sherwood has good reason to believe that Deknatel will sue or threaten to sue it for patent infringement . . . . *Id.* at 729.

This Court interprets *Deknatel* to require a reasonable apprehension that the patent owner would sue for infringement. Plaintiff could not have had any reasonable apprehension of suit by the Authority, since it took no action whatsoever in communicating with the plaintiff.[1] The apprehension was created by the Licensees, and it was suit by the Licensees that was apprehended, not by the Authority. Although Judge Ross focused also on Deknatel's failure to repudiate its employee's statement, that failure alone should not be sufficient to impute a course of conduct by an unauthorized licensee to the patentee.

## II.

In addition, the Court must dismiss this case for the reason that the defendant Authority is not amenable to service of process under the Nebraska Long Arm Statute, Neb.Rev.Stat. § 25–536 (1974 Supp.)[2]

The relevant portion of the statute reads as follows:

(1) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

(a) Transacting any business in this state;

Amenability to extra-territorial personal jurisdiction is a question of due process. A defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This Court has previously held that Nebraska's Long Arm Statute is as broad as the constitutional standard of due process. *Vergara v. Aeroflot "Soviet Airlines,"* 390 F.Supp. 1266 (D.Neb. 1975). *See also Morton Buildings of Neb., Inc. v. Morton Buildings, Inc.,* 333 F.Supp. 187 (D.Neb.1971); *Von Seggern v. Saikin,* 187 Neb. 315, 189 N.W.2d 512 (1971).

In the Eighth Circuit, personal jurisdiction under long-arm statutes must meet due process requirements governed by the following guidelines: (1) the nature and quality of the con-

---

1. It appears that the Authority was unaware of the "threats" of suit emanating from the Licensees until this action was filed. It is also inferential from plaintiff's failure to name the Authority as the owner of the patent in its original complaint that plaintiff did not know who the owner of the patent was.

2. Defendant Paviour also bases its motion to dismiss upon the Court's finding that the Authority is not subject to this Court's jurisdiction. Defendant contends that the patent owner is an indispensable party and that without its presence there is no case or controversy.

In *Caldwell Manufacturing Co. v. Unique Balance Co.,* 18 F.R.D. 258 (S.D.N.Y.1955), the plaintiff brought an action for a declaratory judgment of invalidity of a patent or non-infringement or both against the licensee. The court held:

The emphasis today is upon the ability to bring suit to protect the patent against infringement; and, as a manifestation of that power, to be free to select the forum in which the question of infringement should be tried. Instead of predicating the right to sue upon the semantic categorization of litigants as "licensees" or "assignees," the more recent cases have tended to place reliance upon the right to bring suit in affirmance of the patent.

. . . . . .

In the absence of the licensor-patentee as a party defendant in the Southern District action, this declaratory judgment proceeding must fail, since the "case or controversy" requirement is unsatisfied. *Id.* at 264–265. Since the Licensees do not possess the power to bring suit for patent infringement, dismissal is warranted if the Court is without jurisdiction over the Authority.

tacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the forum state; (4) the interest of the forum state in providing a forum for its residents; (5) the convenience of the parties. *Electro-Craft Corp. v. Maxwell Electronics Corp.,* 417 F.2d 365, 368 (8th Cir. 1969).

 When a plaintiff seeks to bring a defendant into court under a long-arm statute, he must state sufficient facts in the complaint to invoke jurisdiction. Once jurisdiction has been denied, plaintiff has the burden of proving such facts. *Block Industries v. DHJ Industries, Inc.,* 495 F.2d 256 (8th Cir. 1974); *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir. 1973).

. The license agreement between the parties provides in relevant part:

> The Licensee shall pay to the Authority on the 1st day of April and the 1st day of October of each year in respect of each of the said markers manufactured and sold by or on behalf of the Licensee in the United States of America during the continuance of this license royalties calculated at the rate of 5% of the Licensee's ex factory price.

Therefore, there is no question that the Authority derived profits from the sale of the goods in the United States by its agent, the Licensees. Furthermore, by entering into the license agreement for distribution in the United States, the Authority promoted sales in the United States. *Cf. Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir. 1975). However, plaintiff has failed to prove by a preponderance of evidence that the Authority derived sufficient revenue from sales in Nebraska to justify its amenability to service of process in this jurisdiction. Defendant Paviour, in answers to interrogatories, states that upon information and belief, it has not sold any marker devices in Nebraska.[3]

Despite nearly five months of discovery, plaintiff has only been able to prove the existence of two sales of chin-ball markers which were sold by American Breeders Services, a Wisconsin corporation, to a Nebraska resident. Despite the fact that plaintiff deposed the former general sales manager and Vice President of Marketing of American Breeders Services, plaintiff failed to establish that the sales were not isolated sales. It is well established that personal jurisdiction over a foreign corporation requires "continuous systematic" activities as distinguished from "single or isolated items of activities." *International Shoe v. Washington, supra,* 326 U.S. at 317, 66 S.Ct. at 159. Plaintiff has not established what the relationship of American Breeders Service is to the Authority nor who manufactures the devices sold by American Breeders Service.

For the aforementioned reasons, the Court must dismiss this case. An Order is filed contemporaneously herewith in accordance with the findings delineated herein.

### SUPPLEMENTAL MEMORANDUM

This matter comes before the Court upon the motion of plaintiff to alter or amend judgment, subsequent to the submission of briefs by the parties.

Plaintiff, Ag-Tronic, Inc., asserts that the Court's conclusions of law are erroneous. In this regard, plaintiff's motion raises the following contentions: (1) The "reasonable apprehension of suit" test does not require reasonable apprehension that the patent owner would sue; reasonable apprehension of suit from a licensee without authority to sue is sufficient; (2) that although a reasonable apprehension of suit by defendant Authority may not have existed on December 10, 1974, it did exist on September 24, 1975, and plaintiff should be allowed to amend its complaint; and (3) that the aggregate contacts of defendant Authority with the United States ·as a whole

---

**3.** Although interrogatories propounded to the Authority remain unanswered, the questions are not relevant to the amenability of this defendant to service of process in Nebraska.

are sufficient to satisfy the fifth amendment and hence personal jurisdiction is present. Because the Court finds that plaintiff's reliance upon contacts with the United States alone is misplaced, the Court shall deny plaintiff's motion.

Plaintiff places primary reliance upon *Cryomedics, Inc. v. Spembly, Ltd.,* 397 F.Supp. 287 (D.Conn.1975). In *Cryomedics,* Judge Newman held:

> When a federal court is asked to exercise personal jurisdiction over an alien defendant sued on a claim arising out of federal law, jurisdiction may appropriately be determined on the basis of the alien's aggregated contacts with the United States as a whole, regardless of whether the contacts with the state in which the district court sits would be sufficient if considered alone. *Id.* at 290.

Rule 4(d)(7), Fed.R.Civ.P., provides as follows:

> Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the . . . state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.

Defendant Authority was served with process pursuant to this rule, Rule 4(e) and the Nebraska long-arm statute. While it is true that the due process clause of the fourteenth amendment does not apply to federal action and the due process clause of the fifth amendment does, the same minimal contacts test applicable under the fourteenth amendment is applicable under the fifth amendment, although national contacts may properly be considered under the fifth amendment. Sufficiency of service of process under Rule 4(d)(3) is a matter governed solely by federal rather than state law. Under Rule 4(f),

> [a]ll process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.

Therefore, unless Congress has provided for nationwide service of process, when the defendant is a foreign corporation it must have an agent within the territorial limits of the State in which the court sits, unless substituted service or extrastate service can be made pursuant to Rule 4(d)(7) when a State statute so authorizes. "A sovereignty may by statute or rule impose restrictions upon the exercise of personal jurisdiction by its courts, and the United States has done so." *First Flight Company v. National Carloading Corporation,* 209 F.Supp. 730, 739 (E.D.Tenn.1962). Rule 4(f) is one such restriction. *See Restatement of Judgments,* sec. 5, comment b. Under Nebraska's long-arm statute, plaintiff must prove that defendant transacts business in the state. Neb.Rev.Stat. § 25–536 (1974 Supp.).

This requirement inheres whether the due process limitations are imposed by the fourteenth amendment or the fifth amendment, as Rule 4(e) requires service "made under the circumstances . . . prescribed in the [state] statute or rule." Although Congress has the power to provide for nationwide service of process in cases brought against foreign patent owners, limited only by the fifth amendment and national contacts, it has not done so. Rather, Congress chose to enact a federal long-arm statute with jurisdiction in the United States District Court for the District of Columbia. 35 U.S.C. § 293.

Plaintiff misreads *Cryomedics, Inc. v. Spembly.* Cryomedics brought an action against Spembly for patent infringement and declaratory judgment of patent invalidity and non-infringement. The first three counts of its complaint charged Spembly with infringement of its United States patent. Count IV sought a declaratory judgment of patent invalidity of Spembly's patent and non-infringement by plaintiff. With regard to the

declaratory judgment, Judge Newman applied the Connecticut long-arm statute and stated that he would deny the motion to dismiss and permit discovery on the issue of contacts with the State. With respect to the first three counts of the complaint charging infringement of plaintiff's United States patent, however, Judge Newman relied upon contacts with the United States, rather than Connecticut, and ancillary personal jurisdiction then existed over Count IV. The Court was therefore able to distinguish *Gerber Scientific Instrument Co. v. Barr and Stroud Ltd.,* 383 F.Supp. 1238 (D.Conn.1973). If *Cryomedics* stands for a broader proposition of law, which would negate a requisite finding of transacting business in the State of Nebraska, this Court declines to follow its precedent. Although the result is indeed anomalous when an alien defendant has no legitimate preference for suit in any one State, to hold otherwise would be to invade the province of Congress.

IT IS THEREFORE ORDERED that plaintiff's motions to alter or amend judgment and for leave of Court to file an amended complaint are denied.