**SHERMAN TREATERS, LTD., Plaintiff,**
v.
**Andreas AHLBRANDT, Defendant.**

**Civ. A. No. 84–3319.**

United States District Court,
District of Columbia.

March 7, 1985.

Donald Dennison, Dennison, Meserole, Pollack & Scheiner, Arlington, Va., for plaintiff; Burton L. Lilling, Bruce E. Lilling, Lilling & Greenspan, White Plains, N.Y., of counsel.

Daniel F. Attridge, Kirland & Ellis, Washington, D.C., Thomas O. Kloehn, Barry E. Sammons, Charles A. Grube, Thomas G. Atkinson, Quarles & Brady, Milwaukee, Wis., for defendant.

## MEMORANDUM OPINION

### JUNE L. GREEN, District Judge.

This matter is before the Court on plaintiff's motion for partial summary judgment as to noninfringement, invalidity, and false marking of defendant's patent; defendant's cross-motion for summary judgment as to lack of subject matter jurisdiction; the parties' oppositions thereto; their respective replies; and the entire record herein. The Court heard oral arguments on these motions on February 22, 1985. For the reasons stated below, the Court grants defendant's motion for summary judgment and denies the motion of plaintiff.

Plaintiff filed the instant action on October 30, 1984, seeking declaratory relief for noninfringement, invalidity, and false patent marking, and damages for fraud on the United States Patent and Trademark Office and unfair competition.

## I.

Plaintiff is a British corporation that manufactures ceramic and quartz tube corona discharge treaters for sale and distribution in the United States. Amended Complaint ¶¶ 1, 5. Defendant is a citizen of the Federal Republic of Germany and patentee of United States Patent No. 4,446,110. The

patent protects specific characteristics of ceramic and quartz tube corona discharge treaters manufactured by Ahlbrandt-System G.m.b.H., of which defendant is president. Answer ¶¶ 2, 6; Defendant's Statement of Points and Authorities Opposing Plaintiff's Motion for Partial Summary Judgment ("Opposition of Defendant") at 4–6.

In December 1983, Enercon Industries Corporation ("Enercon") of Wisconsin was granted an exclusive license to use and sell the patented invention in the United States. Amendment to Marketing Agreement ¶ 2 (filed Feb. 14, 1985). The agreement specifically granted to Enercon the first "right to enforce [the patent] against third party infringers at Enercon's expense." If Enercon failed to act, the right to enforce the patent fell to Ahlbrandt-System.[1] Id. at 2 ¶ (a).

Plaintiff alleges that officials from Enercon have "threaten[ed] customers and potential customers with infringement actions in order to secure a better position for Defendant's machines in the market place." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opposition of Plaintiff") at 3. In addition, plaintiff claims that Enercon placed several advertisements in a trade magazine in which the company falsely stated that it owned the patent in question and falsely described the scope of the patent. "As a result, these ads must inevitably discourage companies from purchasing corona discharge treater systems from anyone but Defendant." Id. at 5–6.

Plaintiff has filed suit against defendant, claiming that Enercon acted on behalf of defendant as an agent or representative. See Amended Complaint ¶¶ 8, 36–37; Oppo-

---

**1.** The agreement actually is between Ahlbrandt-System and Enercon, and grants to Enercon an exclusive license to use and sell inventions "under any applicable U.S. patents which Ahlbrandt-System G.m.b.H. or Andreas Ahlbrandt may own or obtain." Amendment to Marketing Agreement at 1. The agreement is signed by defendant as president of Ahlbrandt-System. Id. at 3.

Plaintiff contends that the agreement and the manufacturing plates bearing defendant's rather than the manufacturer's name on the patented invention are evidence that Ahlbrandt-System is the alter ego of defendant. Plaintiff's Proposed Findings of Fact ¶¶ 9–13. Whether defendant and Ahlbrandt-System are one and the same is immaterial to the issue before the Court as to whether Enercon's actions may be imputed to defendant.

sition of Plaintiff at 3, 5. Enercon is not a party to this action since it has no contacts with this district. Defendant, on the other hand, is a non-resident alien without an agent in the United States for service of process, and therefore is subject to jurisdiction only in this district. 35 U.S.C. § 293 (1984).

In his motion for summary judgment, defendant argues that this Court has no jurisdiction since no actual controversy exists between plaintiff and defendant. Rather, the controversy is with Enercon, who acted on its own behalf as exclusive licensee of the patent.

The Court agrees that no justiciable controversy exists between the parties to this action and, as such, dismisses the case for lack of jurisdiction.

## II.

The Court's jurisdiction is limited by Article III, section 2 of the United States Constitution, which states, in relevant part, that "judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties ... [and] to Controversies between two or more States; ..." U.S. Const. art. III, § 2.

Courts have interpreted the "case or controversy" language of Article III as requiring

a concrete case touching the legal relations of parties having adverse legal interests, and susceptible "of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged." The distinction is between a case "appropriate for judicial determination" on the one hand, and a "difference or dispute of a hypothetical or abstract character" on the other.

*Dewey & Almy Chemical Company v. American Anode, Inc.,* 137 F.2d 68, 70 (3d Cir.), *cert. denied,* 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943) (quoting *Aetna Life Insurance Company v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937) ); *see Willing v. Chicago Audi-torium Association,* 277 U.S. 274, 289–90, 48 S.Ct. 507, 509, 72 L.Ed. 880 (1928) ("The fact that the plaintiff's desires are thwarted by its own doubts, or by the fears of others, does not confer a cause of action. No defendant has wronged the plaintiff or has threatened to do so.").

■ The requirements of a "case or controversy" apply equally to suits brought under the Declaratory Judgments Act, 28 U.S.C. § 2201 (1982), as to other actions. *Altvater v. Freeman,* 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450 (1943). The parties must have a controversy of " 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969) (quoting *Maryland Casualty Company v. Pacific Coal & Oil Company,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)); *Davis v. Ichord,* 442 F.2d 1207, 1214 (D.C. Cir.1970); *Dr. Beck and Company v. General Electric Company,* 317 F.2d 538, 539 (2d Cir.1963) (need "actual controversy in the constitutional sense").

■ Patent cases in which the plaintiff seeks declaratory relief are no exception to the "case or controversy" requirements. Generally, an actual controversy exists in patent cases "only if the patentee-defendant in the declaratory judgment lawsuit has either expressly or impliedly charged the plaintiff with infringement of its patent." *Sherwood Medical Industries, Inc. v. DeKnatel, Inc.,* 512 F.2d 724, 727 (8th Cir.1975). Any statements or conduct by defendant which raise a reasonable apprehension of an infringement suit against plaintiff or its customers may constitute a charge of infringement. *Id.* at 727–28; *Robin Products Company v. Tomecek,* 465 F.2d 1193, 1195–96 (6th Cir.1972); *W.R. Grace & Company v. Union Carbide Corporation,* 319 F.Supp. 307, 310 (S.D.N.Y. 1970); 6A J. Moore, *Moore's Federal Practice* § 57.20 (2d ed. 1984).

■ The Declaratory Judgments Act provides to the alleged patent infringer a cause of action if no suit is brought by the

party charging the infringement. The Act protects alleged infringers by allowing them to place the issues of infringement and validity of the patent before the courts. The requirement of an "actual controversy," on the other hand, protects patentees from harassment if they refrain from charging infringement. " '[T]he mere existence of the patent is not a cloud on title, enabling any apprehensive manufacturer to remove it by suit.' " *W.R. Grace & Company v. Union Carbide Corporation,* 319 F.Supp. at 309–10 (citations omitted); *see Societe de Conditionnement en Aluminium v. Hunter Engineering Company, Inc.,* 655 F.2d 938, 943 (9th Cir.1981).

■ To establish an actual controversy and thereby protect the patentee, plaintiff must show a reasonable apprehension of an infringement suit "by the defendant *presently before the court." DMP Corporation v. Rederiaktiebolaget Nordstjernan,* 223 U.S.P.Q. 560, 561 (D.D.C.1983) (emphasis added).

Plaintiff in the instant action has not alleged that defendant in any way acted directly to cause plaintiff to fear suit by defendant himself. Rather, the allegations are restricted to the actions of Enercon, an exclusive licensee of defendant's patent.

■ The conduct of a licensee may not be imputed automatically to the patentee. The "acts of a patentee's agents charging infringement without specific authority do not warrant the initiation of a declaratory judgment action." *Ag-Tronic, Inc. v. Frank Paviour LTD.,* 70 F.R.D. 393, 397 (D.Neb.1976); *see Dr. Beck and Company v. General Electric Company,* 317 F.2d at 539 (statement by defendant's employees not imputed to defendant).

■ To create a controversy between plaintiff and the patentee, an agent must

have actual or apparent authority to level a charge of infringement on behalf of the patentee. Without such authority, plaintiff could not apprehend reasonably an infringement suit by the defendant-patentee. A reasonable apprehension in the plaintiff must be created by the patentee directly or through his authorized agents in order for the plaintiff to place the validity of the patent in question. The patentee should not be subjected to a declaratory judgment action for charges of infringement which he did not level himself or allow another to level. *Id.; Acme Highway Products Corporation v. Maurer,* 524 F.Supp. 1130, 1131 (D.D.C.1981). *Contra Societe de Conditionnement en Aluminium v. Hunter Engineering Company, Inc.,* 655 F.2d at 945 (question of authority not important because focus is on plaintiff's reasonable apprehension, not on patentee's conduct).

In the instant case, plaintiff alleges that Enercon made all charges of infringement. Plaintiff, however, presented no relevant evidence that Enercon had specific authority to speak on behalf of defendant.

■ To determine the scope of Enercon's authority, the Court must look to the license agreement. *DMP Corporation v. Rederiaktiebolaget Nordstjernan,* 223 U.S.P.Q. at 562. Not only did Enercon lack authority under the agreement to speak on behalf of defendant, but the licensee had *express* authority to act on its *own* behalf in instituting infringement suits. The agreement granted to Enercon "the unilateral power,[2] authority and discretion" to enforce the patent against third-party infringers without the permission or knowledge of defendant. Affidavit of Andreas Ahlbrandt ¶¶ 8–10 (filed with Opposition of Defendant); Affidavit of Donald H. Nim-

---

**2.** Plaintiff contends that the affidavits misstate the scope of authority granted to Enercon under the agreement. Plaintiff argues that Enercon does not have "unilateral power" to enforce the patent since Ahlbrandt-System has a similar right if Enercon fails to act. The key test, however, is whether the licensee had an "independent" right to sue on its own behalf, rather

than the "sole" right to enforce the patent. *Caldwell Manufacturing Company v. Unique Balance Company,* 18 F.R.D. 258, 264 (S.D.N.Y. 1955); *see DMP Corporation v. Rederiaktiebolaget Nordstjernan,* 223 U.S.P.Q. 560, 562 (D.D.C. 1983) (Either patentee or licensee, alone, could institute suit for patent infringement.).

mer ¶¶ 7, 11 (filed with Opposition of Defendant).

▇ By granting to Enercon an independent right to sue, defendant surrendered his right unless Enercon refrained from enforcing the patent. The contractual transfer of this right provided plaintiff the opportunity to sue the licensee without fear of a separate infringement action by the patentee. *Micro-Acoustics Corporation v. Bose Corporation*, 493 F.Supp. 356, 359–60 (S.D.N.Y.1980); *Channel Master Corporation v. JFD Electronics Corporation*, 260 F.Supp. 568, 572 (E.D.N.Y.1966), *reh'g denied*, 262 F.Supp. 292, 294 (1967); *Consolidated Vacuum Corporation v. Machine Dynamics, Inc.*, 230 F.Supp. 70, 73 (S.D.Cal.1964); *Caldwell Manufacturing Company v. Unique Balance Company*, 18 F.R.D. 258, 263–64 (S.D.N.Y.1955). *Contra Agrashell, Inc. v. Hammons Products Company*, 352 F.2d 443, 446 (8th Cir. 1965) (agreement to sue in own name is without significance).

Plaintiff seems to contend that Enercon had apparent authority to act on behalf of defendant because defendant owned the patent and retained exclusive manufacturing rights under the license agreement. Plaintiff also disputes the validity of the license agreement and argues that it constitutes merely. a marketing agreement, giving no rights in the patent to Enercon. Opposition of Plaintiff at 13, 15; *see* Plaintiff's Proposed Findings of Fact ¶ 23.

▇ " '[A]pparent authority results from conduct by the principal which causes a third person reasonably to believe that a particular person, who may or may not be the principal's agent, has authority to enter into negotiations or make representations as his agent.' " *Ag-Tronic, Inc. v. Frank Paviour, LTD.*, 70 F.R.D. at 397 (quoting Seavey, *Agency* at 13 (1964)). Defendant

Ahlbrandt engaged in no conduct to cause plaintiff to believe that he consented to the charges of Enercon. Defendant had no communication whatsoever with plaintiff. Owning the patent and retaining the right to manufacture the invention are insufficient to create a reasonable belief in plaintiff that Enercon was acting on behalf of defendant. In fact, defendant expressly granted to Enercon the right to enforce the patent on its own behalf.[3] He could have done no more to avoid creating in Enercon the appearance of authority to speak on behalf of defendant. Moreover, Enercon made no suggestion that it was acting on behalf of anyone but itself. In fact, plaintiff claims that Enercon held itself out as owner of the patent. Opposition of Plaintiff at 5.

▇ Even under the more liberal interpretation of a "case or controversy" in *Societe de Conditionnement en Aluminium v. Hunter Engineering Company, Inc.*, plaintiff could not have a "real and reasonable apprehension" of an infringement suit by defendant. 655 F.2d at 944. Plaintiff knew only that Enercon sold defendant's corona treater stations, that Enercon was leveling charges of infringement, and that defendant was the foreign owner of the patent in question. Armed with this information, plaintiff assumed that Enercon was defendant's United States spokesman. Opposition of Plaintiff at 9–10. Plaintiff did not inquire into the authority of Enercon. "Whether such inquiry is required should be determined by whether, in the given factual situation, apprehension would be reasonable without it." *Societe de Conditionnement en Aluminium v. Hunter Engineering Company, Inc.*, 655 F.2d at 945. Under the facts in this case, plaintiff could not apprehend reasonably an infringement suit by defend-

---

**3.** The transfer of rights in a patent is governed by the legal effects of the agreement's provisions, not by the name of the agreement. *Kronner v. United States*, 110 F.Supp. 730, 734, 126 Ct.Cl. 156 (1953); *Eterpen Financiera Sociedad de Responsabilidad Limitada v. United States*, 108 F.Supp. 100, 104 (Ct.Cl.1952), *cert. denied*, 346 U.S. 813, 74 S.Ct. 22, 98 L.Ed. 340 (1953).

The Court finds that the agreement with Enercon, although entitled "Amendment to Marketing Agreement," granted an exclusive license to use and sell the invention. A patentee need not release all his rights to the patent under a license agreement. *See Bement v. National Harrow Company*, 186 U.S. 70, 88, 22 S.Ct. 747, 754, 46 L.Ed. 1058 (1902).

ant without at least some minimal inquiry into the relationship between Enercon and defendant.

 All communications alleging infringement were from Enercon, which is not a party to this suit. Enercon had authority to act on its own behalf to protect the patent. This Circuit twice has found that the acts of an exclusive licensee with an independent right to sue could not create a case or controversy between the plaintiff and a patentee. In *Acme Highway Products Corporation v. Maurer,* the court held that an exclusive license to make, use, and sell the invention operated as an assignment of the patent as a matter of law and entitled the licensee to maintain an action for infringement in its own name without the advice, request, or participation of the licensor. Since the licensee had an independent right to sue and only the licensee charged the plaintiff with infringement, the court held that the controversy existed with the licensee, not the patentee. 524 F.Supp. 1130, 1131 (D.D.C.1981) (Joyce Green, J.).

The Circuit went a step further in *DMP Corporation v. Rederiaktiebolaget Nordstjernan,* in which the court recognized an independent right of the licensee to enforce the patent under a license agreement. That right, the court concluded, allowed the licensee to charge infringement in its sole capacity as a licensee and not on behalf of the patentees. 223 U.S.P.Q. 560, 562–63 (D.D.C.1983) (Hogan, J.). The court therefore refused to impute the actions of the licensee to the patentees and dismissed the suit against defendant-patentees. *Id.* at 563.

Based on the license agreement in the instant case and Enercon's alleged actions, plaintiff could not have apprehended reasonably a suit by defendant. Nothing in the facts suggests a case or controversy between plaintiff and defendant. Rather, the controversy is between plaintiff and the licensee.

This Court therefore grants defendant's motion for summary judgment and denies plaintiff's motion for lack of jurisdiction.

The Court need not, and does not intend to, rule on the merits of plaintiff's motion.