**FEDERAL EXPRESS CORPORATION,**
Appellant

v.

**AIR LINE PILOTS ASSOCIATION,**
Appellee.

**No. 94–7225.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 6, 1995.

Decided Oct. 20, 1995.

Paul D. Jones, argued the cause and filed the briefs for appellant. Merrell B. Renaud entered an appearance.

Jonathan A. Cohen, argued the cause for appellee, with whom Marcus C. Migliore and Michael E. Abram, were on the brief.

Before: WALD, SILBERMAN and SENTELLE, Circuit Judges.

WALD, Circuit Judge:

Appellant Federal Express Corporation ("FedEx") seeks review of a decision by the district court dismissing its suit for declaratory judgment against the Air Line Pilots Association ("ALPA") due to lack of a case or controversy. In 1993, shortly after ALPA was certified as the first-ever representative for pilots employed by FedEx and collective bargaining negotiations were in progress, the company unilaterally imposed changes in certain work rules—such as travel expenses and dress code—and extended a policy prohibiting FedEx pilots from working on flights flown exclusively within Canada. Arguing that under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* (1988), it was permitted to implement these changes unilaterally because no collective bargaining agreement was yet in effect, FedEx sought a declaratory judgment of that right. ALPA argued it did not oppose the changes already implemented, and since FedEx had proposed no future changes, there was no concrete legal dispute. The district court agreed with ALPA, finding that the case was not justiciable in the absence of an actual controversy between the parties. *Federal Express Corp. v. Air Line Pilots Ass'n,* No. 93–2123 (D.D.C. Oct. 13, 1994). We affirm.

## I. FACTUAL BACKGROUND

On June 14, 1993, ALPA was initially certified by the National Mediation Board as the collective bargaining representative for pilots employed by FedEx. Prior to that time, FedEx pilots were not represented by any labor organization. On the same day the

certification was finalized, August 13, 1993, ALPA filed a lawsuit against FedEx, seeking to force the company to "treat and confer" with the union. *See Air Line Pilots Ass'n v. Federal Express Corp.*, No. 93–1669 (D.D.C. 1993). A few days later, FedEx agreed to meet with ALPA to initiate collective bargaining, and ALPA voluntarily dismissed the lawsuit.

The parties did not begin actual negotiations over a collective bargaining agreement until late August 1993, and in the interim FedEx began implementing several unilateral changes to its personnel policies, such as its method for accounting for travel expenses, its dress code, and its procedures for handling disputes. While negotiations were proceeding, FedEx also unilaterally extended a provision of its rules, which otherwise would have expired on October 1, 1993, allowing the company to use non-FedEx employees to perform intra-Canadian flights.[1]

The parties did not agree on FedEx's right to unilaterally change terms of employment. FedEx believed that because there was no previous history of collective bargaining covering the FedEx pilots, and no collective bargaining agreement was in place, it was not required by the RLA to bargain with ALPA before changing work rules. ALPA contended that FedEx was required to negotiate before implementing any changes.

On September 30, 1993, following a series of discussions over the terms of an initial collective bargaining agreement, Don Wilson, the principal negotiator for ALPA, sent a letter to FedEx negotiator Donald Maliniak concerning the intra-Canadian flying policy. Wilson indicated that if FedEx unilaterally extended the policy of using non-FedEx pilots, and thus failed to "comply with its obligations to negotiate ... as required by the Railway Labor Act," ALPA would "take all appropriate action to remedy the Company's violations of the Act."

On October 13, 1993, FedEx filed this suit, seeking a declaration that it could unilaterally change terms and conditions of employment while collective bargaining negotiations were still in progress. FedEx claimed there was an actual case or controversy over its right to make unilateral changes during initial bargaining and that this fundamental legal uncertainty as to its rights and obligations under the RLA was preventing it from effectively conducting its operations. Even though ALPA continued to maintain that FedEx was obliged to negotiate in good faith before changing any terms or conditions of employment, it argued in its answer to FedEx's complaint that there was no controversy because it had not objected to the substance of any of the changes already implemented by FedEx, that FedEx was proposing no additional changes, and that the two parties were still engaged in collective bargaining negotiations without impasse or deadlock. In a Memorandum Order filed October 11, 1994, the district court granted ALPA's motion to dismiss for lack of case or controversy, under FED.R.CIV.P. 12(b)(1), finding that "[w]hile [ALPA] may have made threats of bringing a lawsuit in the past, its motions to this Court do not reveal any plan on the part of [ALPA] to bring future legal action against [FedEx]." *Mem. Order* at 8.

## II. DISCUSSION

The federal courts are powerless to decide any matter unless it involves a case or controversy. U.S. CONST. art. III, § 2. The requirement of a case or controversy is no less strict when a party is seeking a declaratory judgment than for any other relief. *Altvater v. Freeman*, 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450 (1943).[2] In order to meet this threshold requirement, there must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would

---

1. Under Canadian law, intra-Canadian flights cannot be flown by American pilots working for an airline, such as FedEx, which is based in the United States. Accordingly, the company had a formal policy of having non-FedEx employees operate those flights.

2. The Declaratory Judgment Act requires an "actual controversy." 28 U.S.C. § 2201(a). The term "actual" is, however, one of emphasis, and not indicative of a different standard from Article III as to what qualifies as a controversy. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937).

be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). The Supreme Court has explained:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The question of whether this constitutional requirement has been met is subject to *de novo* review on appeal.[3] *See Mobil Oil Corp. v. Attorney Gen. of Virginia*, 940 F.2d 73, 75 (4th Cir.1991).

■ FedEx argues that there was "sufficient immediacy and reality" in this matter by virtue of ALPA's threats of litigation, and relies heavily on the letter in which ALPA said it would "take all appropriate action to remedy the Company's violations of the Act." This letter, FedEx argues, when viewed in light of other contemporaneous statements by ALPA that FedEx was legally required to negotiate before implementing changes, gave it a "reasonable apprehension" of facing a lawsuit. *See Sherman Treaters, Ltd. v. Ahlbrandt*, 607 F.Supp. 939, 943 (D.D.C.) (threat by patent holder's licensee against potential patent infringer not sufficient to create controversy because licensee lacked authority to sue to enforce patent), *aff'd mem.*, 785 F.2d 322 (D.C.Cir.1985), *cert. denied*, 475 U.S. 1121, 106 S.Ct. 1639, 90 L.Ed.2d 185 (1986); *see also Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.* 846 F.2d 731, 736 (Fed.Cir. 1988) (applying objective test of "reasonable apprehension" in patent case, but not requiring an *explicit threat to sue*). While one might well question whether the same words or actions found sufficient to evoke a "reasonable apprehension" of litigation between patent holders and potential infringers produce the same apprehension in labor negotiators,[4] we find that even under the most charitable criteria laid down in these cases, FedEx has not shown that it had a reasonable apprehension of litigation.

■ Labor disputes frequently inspire robust negotiations, where some degree of "posturing" by the parties is inevitable. *See generally NLRB v. WPIX, Inc.*, 906 F.2d 898, 902 (2d Cir.) ("both sides engaged in some exaggeration, posturing and dilatory tactics, as might be expected in labor negotiations"), *cert. denied*, 498 U.S. 921, 111 S.Ct. 299, 112 L.Ed.2d 253 (1990); *United Paperworkers Int'l Union v. NLRB*, 981 F.2d 861, 866 (6th Cir.1992) (statements "amounted to little more than posturing"). Hard bargaining is encouraged by the RLA, among whose purposes is "to provide for the prompt and orderly settlement of all disputes...." 45 U.S.C. § 151a. Employers and unions can be expected to take aggressive bargaining

---

3. Where a district court denies declaratory judgment on discretionary, prudential grounds, the courts will review for abuse of discretion. *See Wilton v. Seven Falls Co.*, —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (decision by district court to stay declaratory judgment action during pendency of parallel state court proceedings); *Jackson v. Culinary School of Washington*, 59 F.3d 254, 255 (D.C.Cir.1995). Here, the district court's decision suggests that the court relied almost exclusively on non-discretionary grounds, so *de novo* review is appropriate. Under either standard, however, we would reach the same result.

4. Patent holders will frequently brandish a "Damoclean threat," forcing potential infringers to risk accruing huge monetary liability which renders them "helpless and immobile so long as the patent holder refuse[s] to grasp the nettle and sue." Consequently, some courts seem inclined to give a broad reading to "case or controversy" in order to allow potential infringers to "clear the air" and get the matter resolved as early as possible. *See Arrowhead*, 846 F.2d at 735. We do not suggest "case or controversy" can be construed differently depending on the subject matter, but we do point out that collective bargaining, rather than litigation, is the favored mode of settling labor disputes, and the passage of time, rather than exacerbating the problem, frequently cools tempers, and allows amicable resolution of disputes.

positions and freely threaten dire consequences when they are rejected.

 We do not believe ALPA's statement that it would "take all appropriate action," in the context of the ongoing negotiations, could reasonably be viewed as a direct threat to file a lawsuit in the immediate future.[5] Other avenues of action, including an even tougher stance at the bargaining table or a work stoppage, were potentially available to ALPA. Had there been a letter from ALPA's legal department that specifically posed the threat of a lawsuit, a different situation might be presented. But the letter here was not a communication from one legal counsel to another—it was an exchange between *negotiators*. It may be that in some circumstances, a threat to take "all appropriate action" may be interpreted as including an imminent threat to sue, so as to render declaratory relief appropriate. But FedEx has not made out such a case here. Against the background of ongoing negotiations, such a generalized and hedged statement—phrased as a threat to take "all *appropriate* action" (with no suggestion that *legal* action would be appropriate)—does not create a case or controversy.

### III. CONCLUSION

The actions taken by ALPA were not sufficient to create a reasonable apprehension of litigation by FedEx. Consequently, the district court's dismissal of the petition for declaratory judgment for lack of a case or controversy is affirmed.

*So ordered.*

---

**5.** After this case was dismissed, ALPA did file a lawsuit in U.S. District Court for the District of New Jersey, challenging a proposal by FedEx to open a base of operations in Subic Bay, Philippines. *ALPA v. Federal Express Corp.*, No. 2:95cv00430–MTB (D.N.J. filed Jan. 26, 1995). FedEx argues that this lawsuit belies ALPA's assertions that it did not object to changes proposed by FedEx. However, it is not clear that ALPA was apprised of FedEx's plans to open a base in Subic Bay at the time this suit was pending: ALPA claims that it learned of the possibility of a foreign base only during discov-

ery, and that FedEx did not formally announce the Subic Bay base until more than two months after this case was dismissed. At any rate, the subsequent lawsuit is not relevant to whether FedEx faced a threat of litigation at the time it filed this lawsuit. The question of justiciability must be decided on the facts in existence *at the time the suit was filed. See Arrowhead*, 846 F.2d at 736. Here, FedEx has not demonstrated that on the date of its suit, ALPA *knew* of the Subic Bay plan, much less that FedEx reasonably feared a lawsuit blocking it.