OPINION
 

 ROBERTSON, District Judge.
 

 Dr. Claus P. Schnorr, a resident of Frankfurt, Germany, owns U.S. Patent No. 4,995,-082, “Method for Identifying Subscribers and for Generating and Verifying Electronic Signatures in a Data Exchange System” (the “Schnorr patent”). The Schnorr patent, issued February 19, 1991, relates to digital signature technology, whose application relates to the authentication of computerized information. Specifically, the Schnorr patent covers a method for mutual identification of subscribers in a data exchange system designed for the encryption of information. Declaration of Dr. Claus P. Schnorr in Support of Motion to Dismiss for Absence of Justiciable Controversy, ¶ 1.
 

 Cylink Corporation (“Cylink”) markets and sells digital signature technology. Cylink seeks a declaration that its use of a particular digital signature algorithm does not infringe the Schnorr patent. Dr. Schnorr moves to dismiss the complaint for lack of subject matter jurisdiction, asserting the absence of the “actual controversy” necessary to support a declaratory judgment. A hearing was held on this issue in open court on July 2, 1996. This memorandum sets forth the court’s reasons for granting defendant’s motion to dismiss.
 

 Background
 

 Dr. Schnorr licensed his patent to Public Key Partnership (“PKP”) on March 5, 1993. PKP was a partnership formed by Caro-Kann, a wholly-owned subsidiary of Cylink, and RSA Data Security, Inc. (“RSA”). PKP was dissolved in September 1995. Its license agreement with Dr. Schnorr was terminated.
 

 During the months prior to PKP’s dissolution, Cylink and RSA competed for an exclusive licensing agreement with Dr. Schnorr. RSA prevailed. On October 1, 1995, Dr. Schnorr wrote to RSA confirming its immediate appointment as his exclusive representative to license and enforce the Schnorr Patent.
 

 On October 12, 1995, RSA issued a press release announcing that it was the “exclusive representative” for the Schnorr patent and that it was licensing the patent to companies using digital signature technology. The following day, October 13, 1995, Cylink’s in-house counsel telephoned Dr. Schnorr. He proposed that Cylink would represent Dr. Schnorr’s patent better than RSA. He asked Dr. Schnorr whether his agreement with RSA was exclusive and inquired into its terms. Dr. Schnorr responded that his agreement with RSA was exclusive, and he suggested that Cylink apply to RSA to obtain a license for the Schnorr patent. Declaration of Dr. Claus P. Schnorr in Support of Motion
 
 *41
 
 to Dismiss. Cylink’s counsel stated that he doubted whether RSA would really enforce the patent and asked Dr. Sehnorr if he expected RSA to enforce it. Dr. Sehnorr responded that he believed RSA would enforce his patent.
 
 Id.;
 
 Declaration of Robert Fougner in Opposition to Defendant’s Motion to Dismiss.
 

 Cylink never submitted an application for a patent license. Instead, on November 15, 1995, it brought this action for declaratory judgment.
 

 One week later, Cylink received a letter from RSA inviting it to enter negotiations for a license to the Sehnorr Patent. RSA’s letter stated that if Cylink did not wish to obtain a license, it should cease marketing and selling products that incorporate the digital signature algorithm.
 

 Discussion
 

 In the patent context, the “actual controversy” required to maintain an action for declaratory judgment, 28 U.S.C. § 2201(a), exists when (1) there has been an explicit threat or other action by the patentee that creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) there is present activity that could constitute infringement or concrete steps taken with the intent to conduct such activity.
 
 BP Chemicals Ltd. v. Union Carbide Corp.,
 
 4 F.3d 975, 978 (Fed.Cir.1993);
 
 Shell Oil Co. v. Amoco Corp.,
 
 970 F.2d 885 (Fed.Cir.1992). The second element of this test is satisfied by Cylink’s admission that it has sold products employing the digital signature algorithm,
 
 Shell Oil,
 
 970 F.2d at 887 n. 2. The burden of proof on the first element, a reasonable apprehension of suit, lies with the plaintiff.
 
 Id.
 
 at 887. The burden can be sustained either by proving that there has been an express charge of infringement or by application of a totality of the circumstances test.
 
 Id.
 
 at 888;
 
 Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,
 
 846 F.2d 731, 736 (Fed.Cir. 1988). The totality of the circumstances test is an objective one and is applied to the facts existing at the time of the complaint.
 
 Shell Oil,
 
 970 F.2d at 888;
 
 Indium Corp. of America v. Semi-Alloys, Inc.,
 
 781 F.2d 879, 883 (Fed.Cir.1985).
 

 Cylink contends that RSA’s letter was an express charge of infringement and supports its reasonable “apprehension” (the letter was dated a week after Cylink filed suit) of suit by Dr. Sehnorr. The letter recited that RSA was the exclusive licensing agent for the Sehnorr patent and stated that Dr. Sehnorr had directed RSA to “vigorously enforce his rights with regard to this patent.” Amended Complaint, Ex. A The letter also stated that any claim Cylink had to the Sehnorr patent as part of the PKP partnership had been terminated when PKP dissolved. The letter invited Cylink to negotiate for a license and stated that, if Cylink chose not to obtain a license, it should cease marketing and selling any products using digital signature technology with the digital signature algorithm.
 

 I find, however, that the RSA letter, standing alone, was not an express charge of patent infringement. It was a statement of position and an offer to negotiate. It was similar to the letter in
 
 Shell Oil Co. v. Amoco Corp.,
 
 970 F.2d 885, 888 (Fed.Cir.1992) (letter stating that plaintiffs activities “fall within” the patent merely a statement of Amoeo’s position that “did not create a reasonable apprehension of suit”).
 
 Cf. Nalco Allied Chemical Co. v. Allied Colloids, Ltd.,
 
 222 U.S.P.Q. 969, 971, 1983 WL 51862 (D.D.C. 1983) (letter alone would “probably not” support the existence of an actual controversy).
 

 Where there is no express charge of infringement, the totality of the circumstances may nevertheless satisfy the “reasonable apprehension” test.
 
 Arrowhead Indus.,
 
 846 F.2d at 736;
 
 Shell Oil,
 
 970 F.2d at 887-8. Cylink argues that the “circumstances” include a letter Dr. Sehnorr wrote in 1991 RSA’s press release, an e-mail Dr. Sehnorr sent to RSA Dr. Schnorr’s statements to Cylink counsel, and RSA’s letter to Cylink all in the context of an acrimonious commercial relationship between RSA and Cylink. Taken together, Cylink urges, those events support the requisite reasonable apprehension of litigation.
 

 
 *42
 
 Only one of those events involved Dr. Schnorr, the person whose suit Cylink had to “apprehend” in order for the requisite “actual controversy” to exist. That event was a telephone conversation, initiated by Cylink’s in-house counsel, during which Cylink’s counsel tried to persuade Dr. Schnorr to contract with Cylink instead of RSA and attempted to elicit information about Dr. Schnorr’s agreement with RSA. Dr. Schnorr’s answers to those questions — that his agreement with RSA was “exclusive,” that Cylink should apply to RSA for a license, and Dr. Schnorr believed RSA would enforce the patent— were clearly “reflexive and obligatory.”
 
 Shell Oil,
 
 970 F.2d at 889. If Dr. Schnorr had answered otherwise, plaintiff would doubtless have claimed a green light to infringe the patent.
 
 Id.
 
 It was Dr. Schnorr’s
 

 right, either not to sue or not be provoked into suit by another party’s initiated discussions .... We will not encourage litigation by finding a threat to sue only because a non-threatening party, when approached by a possible infringer, asserted its best arguments in discussions.
 
 Id.
 

 Cylink insists that its communications with RSA support its reasonable apprehension that Dr. Schnorr would sue. The “reasonable apprehension” required by the case law, however, is a reasonable apprehension of suit by the defendant presently before the court.
 
 See DMP Corp. v. Rederiaktiebolaget Nordstjernan,
 
 223 U.S.P.Q. 560, 561, 1983 WL 680 (D.D.C.1983).
 
 Cf. Sherman Treaters, Ltd. v. Ahlbrandt,
 
 607 F.Supp. 939, 943-44 (D.D.C.1985), in which Judge June Green wrote that “a patentee should not be subjected to a declaratory judgment action for charges of infringement which he did not level himself or allow another to level” and went on to observe that the license agreement would determine the scope of an agent’s authority.
 
 Id.
 
 If the licensee had an independent right to sue for infringement, the licensee’s threat to sue would not be imputed to the patent holder.
 
 Id.
 
 at 943, n. 2. See also,
 
 DMP Corp.,
 
 223 U.S.P.Q. at 562-63. Because the licensing agreement in this case gives RSA an independent right to sue for infringement, RSA’s threats to sue— if threats they were — will not be imputed to Dr. Schnorr.
 

 The “actual controversy” required by 28 U.S.C. § 2201(a) has not been shown to exist, and this ease must accordingly be dismissed. An appropriate order will issue with this memorandum.
 

 ORDER
 

 For the reasons set forth in the accompanying memorandum, it is this 24th day of September 1996
 

 ORDERED that defendant’s motion to dismiss [# 15] is GRANTED. It is
 

 FURTHER ORDERED that this case be, and it is hereby DISMISSED for lack of subject matter jurisdiction.